## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ST. XAVIER UNIVERSITY, | ) | |
| | ) | Case No. 20-cv-05206 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| ROCCO MOSSUTO, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff St. Xavier University ("SXU") brings this action against the former head coach of SXU's men's baseball team, Rocco Mossuto ("Mossuto"), on claims of trademark infringement (Count I) and conversion (Count II). Mossuto moves for summary judgment on both counts. For the following reasons, the Court grants the motion [61].

**Background**

As discussed below, the following facts are undisputed or deemed admitted unless otherwise noted. SXU is a Chicago-based nonprofit corporation that operates Saint Xavier University (the "University"). In July 2014, SXU hired Mossuto, an alum of the University, as head baseball coach. In or around 2014 or 2015, Mossuto registered a social media account for the SXU baseball team on Twitter.com (the "Twitter Account") with the Twitter handle[1] @SXUbaseball.

On June 24, 2020, SXU terminated Mossuto's employment for reasons that are unrelated to this motion, but which Mossuto claims were unjust. On the same day, Mossuto published a tweet from the Twitter Account (the "First Tweet"). He contends that he attempted to remove any reference to SXU by changing the account name to "Coach Rocco Mossuto." He did not, however,

---

[1] A Twitter handle, which is distinct from a user's Twitter name, is a unique identifier that appears at the end of the Twitter URL..

change the Twitter Account's handle until a few hours later. Mossuto also kept the SXU Logo on the account for a few hours, which he claims was by error. The First Tweet states, "Last tweet for me about SXU Baseball. Thank you to all Cougar baseball nation! Love you all! Please read below. @NAIABall @FacultySxu @disabato." (Dkt. 62, ¶ 40.) Attached to the First Tweet are three screenshots of a statement authored by Mossuto about his departure from the SXU baseball team in which he briefly explains his "reason for no longer being the head baseball coach." (*Id.*)

Between June 28, 2020 and July 17, 2020, Mossuto published four more tweets—two pertaining to baseball, one about his son's christening, and a final tweet (the "Fifth Tweet") about the ownership of the Twitter Account. The Fifth Tweet states, "Per the threat of legal action from my former university this Twitter account will be deleted or taken over by the university. My affiliation with this account will end Monday. Thank you all again for your support." (*Id.,* ¶ 45.) SXU admits that Mossuto did not use the Twitter Account for any monetary purpose. (*Id.*, ¶¶ 47–48.) On July 21, 2020, Mossuto turned the Twitter Account over to SXU.

Following the five tweets, SXU contends and Mossuto denies, that the University was damaged by a decrease in donations to its baseball program by approximately $50,000. (Dkt. 76, ¶ 6.) By comparison, SXU asserts that the decrease was more significant than the decrease in donations to the University's football program. (*Id.*) Further, student baseball athletes subsequently left the baseball program and prospective student baseball athletes decided not to attend the University, which SXU attributes to Mossuto's alleged trademark infringement. (*Id.*)

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any

material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of

the nonmoving party. *Id.* at 255; *Lovelace v. Gibson,* 21 F.4th 481, 483 (7th Cir. 2021). After "a

properly supported motion for summary judgment is made, the adverse party 'must set forth specific

facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

## Discussion

As an initial matter, the Court must determine whether SXU failed to comply with the

requirements of Northern District of Illinois Local Rule 56.1. Under the Rule, a party opposing a

motion for summary judgment is required to file "a concise response to the movant's statement [of

facts] that shall contain… a response to each numbered paragraph in the moving party's statement,

including, in the case of disagreement, specific references to the affidavits, parts of the record, and

other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). The Seventh Circuit routinely

upholds a "district court's discretion in requiring parties to comply strictly with local rule

requirements." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (citation omitted).

Mossuto argues that SXU's lack of compliance with Rule 56.1 should result in the admission

of certain facts. First, Mossuto maintains SXU improperly denies several of his statements of fact

(Dkt. 73, ¶¶ 39, 58–60, 62, 65, 69, 78) without adequate support. Because SXU fails to "provide the

admissible evidence that supports [its] denial in a clear, concise, and obvious fashion, for quick

reference of the court," the facts are deemed admitted. *Curtis*, 807 F.3d at 219. Likewise, SXU's

denial of material facts by boilerplate objection (Dkt. 73, ¶¶ 3–7, 9, 11, 13–24, 28, 49, 73–77) is

improper. *Curtis*, 807 F.3d at 219. Finally, SXU objects to Mossuto's statements citing allegations in

the First Amended Complaint that were later withdrawn.[2]  Understanding the withdrawal, the Court

will give the statements the weight they are due.  Mossuto's further objections to SXU's responses

are stricken as moot, as they have no bearing on the outcome of this motion.

The Court now turns to Mossuto's motion for summary judgment on SXU's trademark

infringement claim (Count I).  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), imposes

liability for damages caused by or likely to be caused by

> (1) [a]ny person who, on or in connection with any goods or services, or any container
> for goods, uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading description
> of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's goods, services, or
> commercial activities…

15 U.S.C. § 1125(a)(1).  SXU brings its claim under § 1125(a)(1)(A), which covers "false association"

or "false endorsement" claims.  Actions brought under § 1125(a)(1)(B) cover "false advertising"

claims, which SXU does not allege.  *See Lexmark,* 572 U.S. at 122.

Mossuto argues that SXU lacks standing to bring its claim under the Lanham Act.  The

Court must "reach the jurisdictional issue first, as '[w]ithout jurisdiction the court cannot proceed at

all in any cause.'"  *Rodas v. Seidlin*, 656 F.3d 610, 615 (7th Cir. 2011) (citing *Steel Co. v. Citizens for a

Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quotation omitted)).  The

issue of standing "remains open to review at all stages of the litigation."  *Pennell v. Glob. Tr. Mgmt.,

LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021) (quotation omitted).  A plaintiff must support its standing

---

[2] Quizzically, SXU opted to file a stipulation withdrawing certain paragraphs from the First Amended Complaint (Dkt. 46) rather than move to file a Second Amended Complaint, requiring the Court to cross-reference both documents to understand what remains of SXU's allegations.

with the manner and degree of evidence required at the present stage of litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). At the summary judgment stage, the Court asks "whether the plaintiffs have supplied evidence of 'specific facts' that, taken as true, show each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) (quoting *id.*).

Mossuto contends that, because the content of his posts on the Twitter Account were not "in connection with any goods or services," SXU does not have standing under the Lanham Act. 15 U.S.C. § 1125(a). This argument conflates two distinct requirements to bring a Lanham Act claim— the "use in commerce requirement" and the "commercial use requirement." *See Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Rsch.*, 527 F.3d 1045 (10th Cir. 2008) (differentiating between the two). The former is a "jurisdictional predicate to any law passed by Congress under the Commerce Clause." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005). The latter, described further below, is the statutory requirement that the alleged infringement must be "in connection with any goods or services." 15 U.S.C. § 1125(a). Therefore, whether Mossuto's tweets were made "in connection with goods or services" is not relevant to his standing argument.

To establish standing for a Lanham Act claim, the plaintiff must show that (1) it experienced an injury to a commercial interest in sales or business reputation; and (2) the defendant proximately caused the injury. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). Although *Lexmark* involved a false advertising claim, courts have also applied the *Lexmark* test to false association claims. *See Towada Audio Co. v. Aiwa Corp.*, No. 18-cv-4397, 2019 WL 1200748, at *7 (N.D. Ill. Mar. 14, 2019) (Blakey, J.). SXU passes the commercial interest prong because it provides evidence of an injury that affected its bottom line. *Id.*

Mossuto's second argument, that he did not proximately cause SXU's injuries, more directly attacks SXU's standing. SXU responds that Mossuto's use of its trademark to falsely criticize

Mossuto's firing proximately caused a decline in donations from alumni and loss of tuition from prospective student-athletes and current student-athletes who departed. *See Lexmark*, 572 U.S. at 138 ("[A] defendant who seeks to promote his own interests by telling a known falsehood to or about the plaintiff… may be said to have proximately caused the plaintiff's harm.") (quotation omitted). In support, SXU maintains that SXU's donations to the baseball program dropped by approximately $50,000 following Mossuto's tweets. (Dkt. 73, ¶ 6.) Taking as true the evidence supplied by SXU, as the Court must, SXU has standing to bring this suit. *Spuhler*, 983 F.3d at 286.

Next, as to the merits of the motion, Mossuto argues that he is entitled to summary judgment on SXU's trademark infringement claim because SXU has not met the commercial use requirement of the Lanham Act—that is, that the alleged infringement was "in connection with any goods or services." 15 U.S.C. § 1125(a). While the Seventh Circuit has not yet squarely opined on this issue, the opinions of several other circuit courts are persuasive. *See Bosley*, 403 F.3d at 680 (holding that plaintiff could not use the Lanham Act as a sword to silence noncompetitor defendant's criticism because defendant's use of plaintiff's trademark was not "in connection with the sale of goods"); *Utah Lighthouse Ministry*, 527 F.3d at 1053 (affirming summary judgment for defendants where defendants' use of plaintiff's trademark was not in connection with any goods or services); *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316 (4th Cir. 2015) (holding that the "'in connection with' language must denote a real nexus with goods or services…"); *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) ("If [defendant's] use is commercial, then, and only then, do we analyze his use for a likelihood of confusion.").

SXU responds, without support, that Mossuto's allegedly infringing conduct satisfies the commercial use requirement because "posting information on a social media service in connection with a trademark is commercial speech subject to the Lanham Act." (Dkt. 69 at 5.) The Court agrees with the Tenth Circuit that not every use of the internet is commercial for purposes of the

Lanham Act. *See Utah Lighthouse Ministry*, 527 F.3d at 1054. Such a holding would "greatly expand the scope of the Lanham Act to encompass objectively noncommercial speech." *Id.* In addition, that the Patent and Trademark Office allows registration of trademarks for the purpose of providing information via the internet, SXU argues, is evidence that such a restriction does not exist. A plain reading of the Lanham Act is evidence to the contrary. 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services…"). SXU must show something more to connect Mossuto's actions to goods or services sufficient to sustain a Lanham Act claim.

The undisputed evidence shows that Mossuto's use of SXU's trademark was not commercial. Though SXU readily admits that Mossuto did not use the Twitter Account for any monetary purpose, it nevertheless brings this claim under the Lanham Act for an alleged trademark infringement that lasted a few hours. (Dkt. 73, ¶ 47–48.) The real issue seems to be that Mossuto used the Twitter Account as a platform to criticize SXU's reasons for terminating his employment. Such a use is not actionable under the Lanham Act. *See Utah Lighthouse Ministry*, 527 F.3d at 1053 ("In our view, the defendant… must use the mark in connection with the goods or services of a competing producer, not merely to make a comment on the trademark owner's goods or services."). Thus, the Court grants Mossuto's motion for summary judgment as to Count I.

Finally, because SXU failed to respond to Mossuto's motion as to Count II, SXU waives any response. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument… results in waiver.").

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [61].

IT IS SO ORDERED.

Date: 9/16/2022                                    Entered:

SHARON JOHNSON COLEMAN
United States District Judge