# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ST. XAVIER UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-05206 |
| | ) | |
| ROCCO MOSSUTO, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Court grants in part and denies in part Defendant Rocco Mossuto's Bill of Costs [84] and grants his motion for attorney fees [89]. As a result, the Court orders the parties to comply with the requirements in Local Rule 54.3. The parties shall file a joint status report on the progress of their obligations by September 15, 2023.

**Discussion**

On September 16, 2022, the Court granted Mossuto's motion for summary judgment on St. Xavier University's ("SXU") claims of trademark infringement and conversion. (Dkt. 82.) In brief, SXU sued Mossuto, the university's former men's baseball coach, after he allegedly used the university's Twitter Account bearing SXU's trademark. Mossuto published messages ("Tweets") from the account thanking the baseball team and its fans for its support, briefly explaining his departure from SXU, and confirming that he was relinquishing use of the Twitter Account. SXU admitted that Mossuto did not use the Twitter Account for a monetary purpose. The Court found that SXU's trademark infringement claim failed because the undisputed facts showed that the alleged infringement was not "in connection with any goods or services" as required by the Lanham Act. *See* 15 U.S.C. § 1125(a). In addition, SXU failed to respond to Mossuto's motion for summary judgment on SXU's conversion claim, effectively abandoning it. As the prevailing party, Mossuto

seeks costs under Federal Rule of Civil Procedure 54(d). He also seeks attorney fees under the Lanham Act. 15 U.S.C. § 1117.

Bill of Costs

Mossuto seeks costs in the amount of $4,562.79.[1] The Seventh Circuit has held that costs "must be awarded to a prevailing party unless one of the recognized situations warranting a denial of costs is present." *Mother & Father v. Cassidy*, 338 F.3d 704, 708, 710 (7th Cir. 2003). Recoverable costs include: (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. *See Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007) (citing 28 U.S.C. § 1920). Although a district court has discretion when awarding costs, the "discretion is narrowly confined because of the strong presumption created by Rule 54 that the prevailing party will recover costs." *Graham v. AT&T Mobility, LLC*, 247 F. App'x 26, 31 (7th Cir. 2007) (citation and internal quotation marks omitted). SXU lodges objections to Mossuto's calculation of costs for unspecified transcript services, court reporter appearance fees, delivery and processing fees, and expedited and condensed transcripts.

*Unspecified Transcript Services*

The Court first addresses SXU's objection to Mossuto's claim for $2,049.20 in "Transcript Services" for the depositions of Allison Kern and Daniel Klotzbach. SXU contends that the invoices attached to Mossuto's Bill of Costs do not define the scope of "Transcript Services," preventing the Court from determining whether the costs exceed the court-imposed threshold for transcript copies. After SXU object, Mossuto supplied more detailed invoices, which he contends were tendered to SXU on October 8, 2022. The updated invoices show that "Transcript Services"

---

[1] Mossuto originally sought $4,795.29 in costs but reduced the amount pursued in reply after acquiescing to some of SXU's objections.

includes charges for copies of the "Original Transcript – Medical, Technical or Video," for which the agency billed at a rate of $4.40 per "unit." (Dkts. 91-4, 91-5, 91-6.) For example, the agency charged $1,060.40 for Kern's original deposition transcript ($4.40 x 241 units). Based on the information presented the Court concludes that the number of units listed for the "Original Transcript" represent the number of transcript pages.

Pursuant to Northern District of Illinois Local Rule 54.1(b), "the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed[.]" The Administrative Office of the United States Courts set the maximum rate for an original transcript copy at $3.65 per page. *See* United States District Court, Northern District of Illinois, *Transcript Rates*, available at https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo (last updated Nov. 24, 2021) (last visited on July 27, 2023). Because the $4.40 page rate exceeds the regular copy rate, the Court reduces Mossuto's costs from $1,060.40 to $879.65 for Kern's original deposition transcript, from $686.40 to $569.40 for the first Klotzbach deposition transcript, and from $158.40 to $131.40 for the second Klotzbach deposition transcript. In total, the Court reduces Mossuto's costs for the original transcripts by $324.75.

*Court Reporter Appearance Fees*

Next, SXU contends that Mossuto seeks excessive court reporter appearance fees. According to the Northern District website (and in accordance with Local Rule 54.1(b)), "the court reporter attendance fee shall not exceed $110 for one half day (4 hours or less), and $220 for a full day attendance fee." *Id.* Because the court reporter's appearance fees exceed the listed rates, the Court reduces Mossuto's costs from $412.50 to $220 for the Kern deposition and from $300 to $220 for the first Klotzbach deposition. Mossuto argues that the Court should reject SXU's opposition to the reduction of the second Klotzbach deposition fee because SXU's deposition

objections prevented the parties from completing the deposition in one day. (*See* Dkts. 47, 51.) The Court declines to do so—the Local Rule prohibits the Court from awarding more than $110 in court reporter attendance fees for the half day deposition. In total, the Court reduces Mossuto's costs related to court reporter appearances by $312.50.

*Virtual Services*

SXU objects to $885 in costs for "Veritext Virtual Services" used during the defense's depositions. Mossuto took these depositions by remote means between August and September 2021, at which time COVID-19 cases were again on the rise. *See* Cent. for Disease Control and Prevention, *Trends in United States Covid-19 Hospitalizations, Deaths, Emergency Dep't (ED) Visits, and Test Positivity by Geographic Area*, available at https://covid.cdc.gov/covid-data-tracker/#trends_weeklyhospitaladmissions_select_00 (last visited on July 27, 2023). The remote depositions allowed SXU's counsel and the deponent to stay in their respective residences in Florida and California, as opposed to traveling to Illinois. Because remote depositions were reasonably necessary during the COVID-19 surge, the Court allows Mossuto to recover costs for the Veritext Virtual Services. *See Siwak v. Xylem, Inc.*, No. 19 C 5350, 2021 WL 5163289, at *1 (N.D. Ill. Nov. 5, 2021) (Feinerman, J.) (awarding costs associated with remote deposition due to the ongoing global pandemic).

*Delivery and Handling Fees*

Mossuto seeks $234 for "Processing & Compliance" and "Delivery & Handling" fees related to the depositions and transcripts. Courts in this district routinely hold that fees related to delivery and handling are ordinary business expenses and therefore unrecoverable. *See, e.g., Cage v. Harper*, No. 17-cv-7621, 2023 WL 3074354, at *6 (N.D. Ill. Apr. 25, 2023) (Seeger, J.) (citing *Hillman v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *4 (N.D. Ill. Aug. 16, 2017) (Castillo, J.)). Additionally, the updated invoices reveal that the "Delivery & Handling" fees represent the cost of

4

hosting and delivering encrypted files, which is also not recoverable. *See Tomas v. Dep't of Emp. Sec.*, No. 07-cv-04542, 2019 WL 10378261, at *1 (N.D. Ill. Oct. 10, 2019) (Coleman, J.) (holding that data hosting is not a recoverable cost). Processing & Compliance fees likewise are ordinary business expenses. For these reasons, the Court grants SXU's objection to these fees and reduces Mossuto's costs by $234.

*Additional Transcript Costs*

Finally, SXU objects to Mossuto's fees for expedited and condensed transcripts. Mossuto contends that he required an expedited transcript to prepare for the parties' video settlement conference, for which the Court required Mossuto to submit his mediation statement by April 26, 2021. Because SXU deposed Mossuto only eleven days earlier, Mossuto maintains that he needed an expedited copy of his deposition transcript to prepare his position statement. This is the kind of necessity for which courts allow fees; therefore, the Court overrules SXU's objection. *GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2019 WL 3410223, at *3 (N.D. Ill. July 29, 2019) (Kennelly, J.) (awarding costs where plaintiff sufficiently articulated why it needed transcripts on an expedited timeline).

The Court also overrules SXU's objection to the $50 spent on two condensed transcript copies. Local Rule 54.1 permits costs for the original transcript and one transcript copy if needed by counsel. Condensed transcripts promote efficiency by reducing the total number of copy pages. Had Mossuto requested standard copies, as permitted by the Local Rules, Mossuto would have incurred $87.60 in fees. Electing to receive a condensed transcript served as a legitimate cost-saving measure. *See Rexam Beverage Can Co. v. Bolger*, No. 06 C 2234, 2008 WL 5068824, at *8 (N.D. Ill. Nov. 25, 2008) (Ashman, J.) (permitting costs for condensed copy of deposition transcript where it served as a less expensive replacement for an additional standard copy). SXU's objection is overruled.

5

For these reasons, the Court orders SXU to pay Mossuto's expenses in the amount of $3,924.04, as set forth in his Bill of Costs, minus the above deductions.

Attorney Fees

Mossuto also requests attorney fees under the Lanham Act, which authorizes the award of reasonable fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). A case is "exceptional" if a court decides "under the totality of the circumstances, that it 'stands out from others with respect to (1) the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or (2) the unreasonable manner in which the case was litigated.'" *LHO Chicago River, LLC v. Rosemoore Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)).

The Court awards attorney fees to Mossuto because SXU's litigation position "stands out from others" due to its legal and factual deficiencies. This case hinged on whether Mossuto used SXU's trademark "in connection with any goods and services" when he posted Tweets about his time as a baseball coach on SXU's Twitter Account. 15 U.S.C. § 1125(a). As the Court addressed in its Memorandum Opinion and Order granting Mossuto's motion for summary judgment, the Seventh Circuit has not opined on the scope of the commercial use requirement.[2] (Dkt. 82, at 6.) But this is not a case on the margins. SXU's arguments at summary judgment that Mossuto used the Twitter Account in connection with goods and services clearly could not prevail given the plain text of the Lanham Act, the persuasive opinions of the Fourth, Sixth, Ninth, and Tenth Circuits, and SXU's failure to cite to contrary legal authority or supporting factual evidence.

---

[2] As explained in its opinion granting Mossuto's motion for summary judgment, the "commercial use requirement" shall refer to the Lanham Act's requirement that the alleged infringement be "in connection with any goods or services." (*See* Dkt. 82, at 5 (distinguishing the "commercial use requirement" from the "use in commerce requirement").)

6

In its response to Mossuto's motion for summary judgment, SXU summarily asserted that posting on a social media site constitutes commercial use without citing any case law in support of its motion. Rather, it argued that the Patent and Trademark Office ("PTO") issues trademarks to entities that "providing online information … via a global communications network." (Dkt. 69, at 7.) SXU's argument missed the mark. The PTO's assessment of trademark registrability for two unrelated trademarks does not control whether Mossuto's use of SXU's trademark was in fact in connection with goods or services.

SXU now argues that it nonetheless defended against summary judgment by distinguishing the cases Mossuto cited to show that his use of the trademark was not commercial. SXU maintains that this is a case of "first impression, where trademarks were used by a defendant on a mark-owner's official social media account…" (Dkt. 92, at 10.) The university contends that its ownership of the Twitter Account distinguishes this case from Mossuto's cited cases, in which the defendants created other platforms (such as third-party websites) to infringe upon the plaintiffs' trademarks. Therefore, SXU argues that Mossuot's use of its own account created "a likelihood of confusion among the account's followers." (Dkt. 69, at 7.) But SXU's argument fails to address the relevant commercial use question. Whether there was a likelihood of consumer confusion only matters if the trademark's use was commercial in nature. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) ("If [an alleged trademark infringer's] use is commercial, then, and only then, do we analyze his use for a likelihood of confusion."). Thus, SXU failed to make a legally or factually supported argument about the commercial use element in its Lanham Act claim. *See Renna v. Cnty. of Union, N.J.*, No. 2:11-3328, 2015 WL 1815498, at *4 (D.N.J. Apr. 21, 2015) (awarding fees in Lanham Act case in part because plaintiff failed to cite any legal support for its position and because plaintiff put forward no evidence that defendant used the mark for a commercial purpose).

Now, SXU attempts to backtrack by offering citations to cases in which courts found evidence of commercial use. Each of these cases is easily distinguishable because, unlike the newly cited cases, SXU put forward no evidence that Mossuto used the Twitter Account for a commercial purpose. *See Jews for Jesus v. Brodsky*, 993 F. Supp. 282 (D.N.J. 1998), *aff'd*, 159 F.3d 1351 (3d Cir. 1998) (finding commercial use where defendant redirected consumers from plaintiff's site to defendant's own website, which defendant admitted was commercial in nature); *Planned Parenthood Federation of America, Inc. v. Bucci*, No. 97 Civ. 0629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998) (finding commercial use where defendant admitted to using the trademark to help sell a book, promote his own services, and divert consumers from accessing information about plaintiff's services); *3700 Assocs., LLC v. Griffin*, No. 08-80158-CIV-MIDDLEB, 2008 WL 4542000 (S.D. Fla. Oct. 6, 2008) (discussing the jurisdictional "in commerce" question rather than the commercial use requirement). Finally, SXU abandoned its conversion claim at summary judgment. This abandonment is clear evidence that the claim lacked merit.

In sum, the Court holds that this was an exceptional case in which attorney fees may be awarded to Mossuto because SXU did not possess a reasonable basis to pursue its Lanham Act claim and abandoned its conversion claim. SXU contends that fees should not be awarded in cases such as this where plaintiffs merely faced an uphill battle. But the Court's ruling does not hinge on SXU's decision to pursue a novel or untested legal theory. Litigants should not be dissuaded from advancing new arguments. Lawyers advancing such arguments will not be subject to the possibility of attorney fees unless—as here—their arguments lack a reasonable legal or factual basis.

**Conclusion**

For the forgoing reasons, the Court grants in part and denies in part Mossuto's Bill of Costs and grants Mossuto's motion for attorney fees. The Court orders SXU to pay Mossuto's expenses in the amount of $3,924.04 as set forth in Mossuto's Bill of Costs, minus the deductions as stated

above. The parties are directed to comply with the requirements in Local Rule 54.3. The parties shall file a joint status report on the progress of their obligations under the Local Rule by September 15, 2023.

IT IS SO ORDERED.

Date: 8/1/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge